## Compensation of State Senators

ADAMS, Deputy Attorney General, August 10, 1956. —Reference is made to telephone conversation with Miss Frobert concerning the salary of former Senator Elmer J. Holland who resigned February 7, 1956.

Some question has been raised as to what compensation, if any, Senator Holland is entitled to receive with respect to the year 1956 for his services as Senator.

The compensation of members of the General Assembly is controlled by constitutional and statutory provisions.

Article II, sec. 8, of the Constitution provides as follows:

"The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term."

The compensation of members of the General Assembly is fixed by section 1 of the Act of June 24, 1919, P. L. 579, as last amended by the Act of May 31, 1955, P. L. 127, 46 PS §4, which reads as follows:

"The salary of the members of the General Assembly shall be three thousand dollars ($3000) for each biennial session, or if annual sessions are provided for three thousand dollars ($3000) for each annual session, and mileage to and from their homes at the rate of five cents per mile circular for each week a member was in actual attendance at the session, to be computed by the ordinary mail route between their homes and the capitol of the State. The salary of the members of the General Assembly shall be five hundred dollars ($500), and mileage as aforesaid, for each special or extraordinary session lasting less than one calendar month, and seven hundred and fifty dollars ($750), and mileage as aforesaid, for each special or extraordinary session lasting one calendar month or more, and no other compensation

shall be allowed whatever, except each member of the General Assembly shall receive an allowance for clerical assistance and other expenses incurred during his term in connection with the duties of his office the sum of three thousand dollars ($3,000), for each year of service, payable one thousand seven hundred fifty dollars ($1,750) on June 1, 1955, two hundred fifty dollars ($250) on July 1, August 1, September 1, October 1, and November 1, 1955, thereafter five hundred dollars ($500) on January 15 of each year and two hundred fifty dollars ($250) on the first day of each month except January and December."

The General Appropriation Act of 1953 (Appropriation Acts of 1953, page 84) makes the following appropriation for the payment of the salaries of Senators, page 85:

"For the payment of the salaries of fifty Senators and extra compensation allowed by law to the President pro tempore of the Senate, Session of one thousand nine hundred fifty-five, the sum of one hundred fifty-one thousand dollars ($151,000)."

The General Appropriation Act of 1953 provides that the salaries of the Senators shall be paid as follows, page 84:

". . . the salaries, stationery and mileage of the Members of the Senate and House of Representatives of the Legislative Session of one thousand nine hundred fifty-five shall be paid by requisition of the Chief Clerk of the Senate or the Chief Clerk of the House of Representatives upon the Auditor General only after statement of the amounts due the several Senators and Members shall have been certified to the respective Chief Clerks by the President pro tempore of the Senate or Speaker of the House of Representatives, and that the Senators and Members receiving fixed salaries for said Session shall be paid *one-fifth*

*of his total salary each month for the first four months of the Session if the Legislature shall be in session that long,* and the balance on the day fixed for the final adjournment of the Legislature or during the two days previous thereto." (Italics supplied)

It will be noted that the constitutional provision and the various legislative enactments mentioned above all provide for, or relate to, the payment of the salaries of Senators for a regular or special session. In other words, the compensation of Senators is for their services rendered during their attendance at a regular or special session of the General Assembly.

In a formal opinion rendered by former Attorney General John C. Bell to Honorable Thomas H. Garvin, then Chief Clerk of the House of Representatives, under date of April 19, 1913 (Official Opinions of the Attorney General, 1913-1914, page 355), this department ruled that the estate of a member of the General Assembly who died during the session was entitled only to the proportionate part of his salary for which he served during the session, and that his successor, who was elected during the session, was entitled to receive only the compenation fixed by law for such services as were rendered by him on and after the date he qualified as a Senator. The basis of that opinion was that the relation between a public officer and the government does not rest upon the theory of contract, but arises from the rendition of services. Thus, it is stated at page 357:

"On the question of the legal rights of the members to receive the compensation provided by law, it is clear that the salary or compensation spoken of in the Constitution and the act of assembly above mentioned, is to be paid to the officers in question for actual services rendered by them."

The opinion also refers to a prior opinion of this

department rendered by former Attorney General Carson, dated December 28, 1906, and reported in 33 Pa. C. C. 177, which exhaustively reviewed the nature of the office of a member of the General Assembly and the right of such member to receive the compensation provided by law. In the course of his opinion, former Attorney General Carson said, page 180:

"It is also clear that the compensation spoken of in the Constitution and in the act of assembly is for services rendered, and it would follow that, if a member of either house died before the rendition of such services, or resigned, or became incapacitated, or for any cause was removed, he could not claim, nor could his estate claim, payment for services not rendered."

Applying the above principles to the facts of the present case, it is apparent that Senator Holland rendered no services during the period between February 7, 1956, and May 22, 1956. There should, therefore, be deducted from the one-fifth of the salary to which he was entitled the pro rata amount for the time during which he was absent and rendered no service. From the time of the payment of the fourth installment (May 1, 1955) until the time of his resignation (February 7, 1956) we have a period of nine months and seven days, or 283 days which he served. The session ended May 22, 1956, and thus there was a period of three and a half months which he failed to serve. The time which he should have served to qualify for the final $600 was one year and 22 days or 388 days. Since he served but 283 days he is entitled to 283/388 of $600 or $437.60.

Accordingly, you are advised that Senator Holland is entitled to the sum of $437.60 for services rendered up to and including the date of his resignation, February 7, 1956, in accordance with the general rule that compensation is payable only for services rendered.